Filed 12/23/21  P. v. Daniels CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B308995 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA347305) |
| v. | |
| BRANDON DANIELS, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING |
| Defendant and Appellant. | NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that that the opinion filed herein on December 16, 2021, be modified as follows:

The four-sentence passage in the second paragraph at page 14 and continuing to page 15 beginning with "Indeed, defendant cites authority . . ." through and including the sentence

"Defendant made no such effort to make a showing in the trial court" is deleted.

There is no change in the judgment.
The petition for rehearing filed by appellant on December 17, 2021, is denied.

_____

*ASHMANN-GERST, Acting P. J.  CHAVEZ, J.  HOFFSTADT, J.

Filed 12/16/21  P. v. Daniels CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRANDON DANIELS,<br><br>    Defendant and Appellant. | B308995<br><br>(Los Angeles County<br>Super. Ct. No. BA347305) |

APPEAL from an order of the Superior Court of Los Angeles County, Craig J. Mitchell, Judge.  Affirmed.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Brandon Daniels (defendant) appeals from the denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1] He contends that in his petition he made a prima facie showing of eligibility for relief, which triggered the trial court's obligation to issue an order to show cause (OSC) and conduct an evidentiary hearing. We disagree and affirm the order denying the petition.

## BACKGROUND

In 2013, defendant was convicted of first degree murder (§ 187, subd. (a); count 1), attempted second degree robbery (§§ 664/211; count 2), and second degree commercial burglary (§ 459; count 3).[2] As to count 1, the jury found true the robbery special-circumstance allegation (§ 190.2, subd. (a)(17)). As to counts 1 and 2, the jury found true the allegation that a principal personally and intentionally discharged a firearm causing great bodily injury and death (§ 12022.53, subds. (d) & (e)); and as to all counts, the jury found true the gang enhancement of section 186.22, subdivision (b). On May 24, 2013, defendant was sentenced to prison for life without the possibility of parole plus a

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] At defendant's request we take judicial notice of our nonpublished opinion affirming the judgment in *People v. Daniels* (Sept. 29, 2014, B249088) (*Daniels I*). Our summary is drawn from the facts set forth in that opinion. We granted respondent's request for judicial notice of portions of the reporter's transcripts supporting facts summarized in the opinion and respondent's brief.

consecutive term of 25 years to life. We affirmed the judgment in *Daniels I, supra*, B249088.

The evidence at trial showed that in 2008, defendant and three fellow gang members (Leon Banks, David Gardiner, and Lovie Troy Matthews) participated in the attempted robbery of a marijuana dispensary during which an unarmed security guard was killed. Matthews was the getaway driver. A GPS monitor that Matthews wore showed that he remained few blocks from the dispensary for about 30 minutes near the time of the attempted robbery. Defendant, Banks, and Gardiner went to the dispensary where Banks entered a secure anteroom or "man trap," with a medical marijuana authorization. (*Daniels I, supra*, B249088.) Banks and another of the robbers then entered the lobby with handguns drawn, while a third kicked down the door to the lobby. A dispensary employee who was assisting a patient in the upstairs loft saw defendant jump over the counter in the lobby and run upstairs where he pointed a gun at the employee and asked, "Where's the shit at?" (*Ibid*.) The employee told him it was behind the bar and to take whatever he wanted. Meanwhile Banks forced two other employees to the ground after he said to one of them, "If you keep looking at me, I will kill you." (*Ibid*.) Banks placed his knee on that employee's back and was attempting to put a zip tie on his wrist when gunshots rang out. Banks said, "Shit, we got to go, we got to go," and the employee saw three gunmen struggling to push their way out the front door from the anteroom. Since the security guard prevented their exit from the outside, the gunmen reentered the lobby and one of them shot through a glass window at the side of the anteroom. (*Ibid*.) Since the security guard prevented their exit from the outside, the gunmen reentered the lobby and one of them shot

3

through a glass window at the side of the anteroom. The three gunmen continued to push on the door until Banks was able to put his arm through the opening and shoot the security guard. As the guard fell backwards Banks stepped from behind the door and shot the guard in the head. After the gunmen were outside, witnesses heard additional gunshots. Defendant fled the area with Matthews and Gardiner in Banks's SUV and later hid from the police. (*Ibid.*)

Defendant's left palm print was found on the inside of the security door to the dispensary. Two handguns, cartridge casings, zip ties, and bullet fragments were recovered outside the dispensary. Zip ties and a bullet were found in the lobby. Investigators also found inside the dispensary a medical marijuana authorization in Banks's name with his fingerprint on it. A handgun was found on the ground near the victim's outstretched arm, and a second handgun was found on South Orange Drive.[3] The cartridge cases were determined to have been fired from the second gun. (*Daniels I*, *supra*, B249088.)

Defendant gave a statement to the investigating detective, admitting that Matthews dropped him, Banks and Gardiner at the marijuana dispensary that day so they could "score some weed."[4] (*Daniels I*, *supra*, B249088.) Defendant knew that Banks would use a piece of paper to get into the dispensary, and once inside defendant went upstairs while Gardiner remained at the entrance with the security guard. When defendant heard a

---

[3] Banks was detained at a location near South Orange Drive, less than two blocks from the dispensary. (*Daniels I*, *supra*, B249088.)

[4] The detective testified that the word "score" was slang for "steal." (*Daniels I*, *supra*, B249088.)

4

gunshot he ran downstairs, talked to Banks, and then saw Gardiner in the lobby. The three of them ran to the exit, attempted to open the door by pushing on it, and then defendant heard the security guard call for help. Defendant claimed that the security guard reached in and fired a gun and Banks fired back in self-defense. The three of them then ran outside and as defendant ran from the dispensary, he called Matthews, who picked them up in Banks's SUV before they drove away. (*Ibid*.)

Defendant, Gardiner, and Matthews were members of the Rolling 30's criminal street gang. Banks was a member of the Rolling 60's criminal street gang. A gang expert opined that the crimes were committed for the benefit of and in association with the Rolling 30's gang. (*Daniels I*, *supra*, B249088.)

Defendant testified that he was addicted to PCP, drank alcohol daily, smoked six to seven grams of marijuana daily, and consumed cocaine and ecstasy on the weekends. He sold drugs to support his habit, and although he was a gang member, he denied selling them for the gang's benefit or giving the gang a cut of his proceeds. Defendant smoked marijuana the night before the robbery and woke up high the next morning. When he woke up he drank two 24-ounce cans of malt liquor and smoked more marijuana.[5] He then went to his "drug partner" Matthews's home where he met Banks, whom he knew only as Matthews's friend. Defendant denied telling the detective that he knew

---

[5] An addiction specialist testified that defendant had a substance dependence or addiction problem, and that such people may develop a tolerance to drugs over time. He opined that such a person who ingested the amount of drugs defendant used would not necessarily be impaired and "might still be relatively functional." (*Daniels I*, *supra*, B249088.)

Banks was a Rolling 60's gang member.  (*Daniels I*, *supra*, B249088.)

Defendant claimed there had been no discussion of a robbery and that he did not see any guns or zip ties at Matthews's home.  Defendant admitted that he had once been "busted" for possessing a gun but claimed that it was for protection when there was animosity between the Rolling 30's and Rolling 60's gangs, and that at the time of the robbery he did not regularly carry a gun.  Defendant had $30 or $40 to "get some" marijuana and mentioned a "pot shop." (*Daniels I, supra*, B249088.)  He had heard some dispensaries would sell the marijuana without requiring a card.  He denied that he intended to rob the dispensary.  (*Ibid*.)

Matthews drove Banks's SUV to pick up Gardiner and then dropped off defendant, Gardiner and Banks in front of the dispensary.  Banks showed the medical authorization, and the three were allowed to go inside.  Defendant testified that Banks was allowed to go to the back while he and Gardiner remained in the front of the dispensary with the security guard.  When Banks did not return after a few minutes, defendant went to the back and upstairs.  Defendant denied seeing Gardiner hold a gun to the guard's head or seeing anyone tied up.  From upstairs, defendant heard a gunshot and then saw two people who had been playing chess duck down.  Defendant claimed he was "shellshocked" and went back downstairs.  (*Daniels I, supra*, B249088.)  He asked Banks if he heard the gunshot, and said, "Man, let's go." (*Ibid*.)  Defendant walked to the lobby and saw that the guard was blocking the way out, so defendant, Banks and Gardiner pushed on the door.  Defendant claimed that the guard reached in and started shooting, and that he "almost shot

6

me in my foot." (*Ibid*.)  Defendant denied he was armed and said he did not see Banks shoot the security guard in the head. Defendant ran away when he did not see Matthews and met up with him after what "seemed like 10 minutes." (*Ibid*.)

Defendant denied he intended to commit a robbery and claimed he did not have any stolen money or marijuana.  When he saw a report on television that he was wanted by the police in connection with the crimes, he left the neighborhood.  Defendant was later arrested at his girlfriend's house where he was found under a bed.  Defendant claimed not to have been hiding but looking for a pacifier.  (*Daniels I, supra*, B249088.)

In April 2019, appellant filed a petition for resentencing pursuant to section 1170.95.  The trial court appointed counsel and received briefing from the prosecutor and defendant's counsel.[6]  On November 4, 2020, with defendant present in court with counsel, a petition review hearing pursuant to section 1170.95, subdivision (a), was held.  The trial court heard argument from both counsel before the petition was denied.

Defendant filed a timely notice of appeal from the court's order.

---

[6] The record in this appeal contains no brief from petitioner. The only brief included in the record is the "People's Supplemental Response to Petition for Resentencing Pursuant to Penal Code Section 1170.95," where it is represented that the People filed their initial response on or about June 21, 2019, and that defendant filed a "supplemental" brief in support of his petition on or about July 21, 2020.  At a hearing in January 2020, the prosecutor told the court that defendant's counsel had filed a reply.

## DISCUSSION

Defendant contends that because his petition alleged the statutory requirements for relief under section 1170.95, subdivision (a), he established a prima facie case. He claims that his showing triggered the trial court's obligation to issue an OSC and conduct an evidentiary hearing at which the parties could offer new or additional evidence relevant to the issue of defendant's eligibility for relief and in which the prosecutor would have the burden to show that defendant acted with reckless indifference to human life as a major participant as those terms were clarified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).[7]

---

[7] Effective January 1, 2019, the Legislature amended the laws pertaining to felony murder or murder under the natural and probable consequences doctrine, "'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842.) The Legislature also added section 1170.95, to give defendants previously convicted of murder under those theories a procedure to retroactively seek vacatur and resentencing if they could not be convicted under the amended laws. A petition for relief must aver: (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," (2) he "was convicted of first degree or second degree murder following a trial," and (3) he "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a); see *Lewis, supra*, 11 Cal.5th at pp. 959-960.)

8

The trial court was not required to issue an OSC, as defendant contends, simply because his petition alleged the statutory requirements under subdivision (a) of section 1170.95. Instead, the court was required to proceed as set forth in subdivision (c) (*People v. Lewis* (2021) 11 Cal.5th 952, 960 (*Lewis*); see § 1170.95, subds. (b) & (c)), which requires that upon the filing of a petition alleging all the required averments, the trial court must appoint counsel if requested and entertain briefing, regardless of whether the record of conviction unequivocally demonstrates that the defendant is not entitled to relief. (*Lewis, supra*, at p. 964.) Then the court may review the record of conviction to aid itself in assessing whether a petitioner has made a prima facie showing of eligibility for relief under the statute. (*Id.* at pp. 957, 971-972.)[8] Only after the court determines that a petitioner has made a prima facie showing must it then issue an OSC and schedule a hearing at which the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for section 1170.95 relief. (§ 1170.95, subd. (d)(1) & (3).)

Although the trial court may not engage in factfinding, weighing of the evidence, or exercise its discretion in determining whether the defendant has made a prima facie showing, the court may consider the record of conviction, including the court's own documents and appellate opinion, in order to distinguish petitions with potential merit from those that are not. (*Lewis,*

---

[8] The Supreme Court has declined to express a view as to whether a petitioner is entitled to present new or additional evidence at the prima facie stage pursuant to subdivision (c) of section 1170.95. (See *Lewis, supra*, 11 Cal.5th at p. 974, fn. 7.) Defendant does not claim that he attempted to do so.

*supra*, 11 Cal.5th at pp. 970-972.) If the record of conviction contains established facts refuting the truth of the petition's allegations, the court may find no prima facie showing has been made and deny the petition without issuing an OSC. (*Id.* at pp. 970-971.) Here, the trial court followed the procedure set forth by section 1170.95, subdivision (c) by appointing counsel and entertaining the parties' briefs. The court then conducted a hearing so counsel could argue. The court found defendant was ineligible for relief as a matter of law due to the true finding of the felony-murder special circumstance. Defense counsel asked for an evidentiary hearing to show that defendant did not act with reckless indifference. The court declined the request and denied the petition. The trial court did not err.

Defendant's petition alleged that defendant was convicted of first degree felony murder but could not now be convicted because of the changes to section 189, effective January 1, 2019, since he was not a major participant in the crime nor acted with reckless indifference to human life. The petition also alleged that there had been a prior determination by a court or jury that he was not a major participant in the crime or did not act with reckless indifference to human life under section 190.2. As the trial court had appointed counsel and entertained briefing, it was entitled to look to the record of conviction to determine the truth of those allegations. (*Lewis, supra*, 11 Cal.5th at p. 971.) Since defendant's jury necessarily found that defendant was a major participant in the underlying felony and acted with reckless indifference to human life when it found true the special circumstance alleged under section 190.2, subdivision (a)(17), the allegations in the petition were untrue. Even as amended section 189 authorizes a murder conviction based on a theory of vicarious

10

liability if the defendant "was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e)(3).) Thus it is untrue that he "could not be convicted of first or second degree murder *because* of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(3), italics added.)

Defendant argues that the jury's special circumstance finding does not preclude him from relief under section 1170.95 because he was convicted before the publication of *Banks, supra*, 61 Cal.4th 788 and *Clark, supra*, 63 Cal.4th 522, in which the California Supreme Court clarified factors to help determine whether an aider and abettor was major participant who acted with reckless indifference to human life.

In *Banks*, the California Supreme Court explained that a "major participant" in a robbery is someone whose "personal involvement" is "substantial" (*Banks, supra*, 61 Cal.4th at p. 802); such a participant "need not be the ringleader" (*People v. Williams* (2015) 61 Cal.4th 1244, 1281), but his involvement must be "greater than the actions of an ordinary aider and abettor" (*Banks*, at p. 802). The court held that the totality of the circumstances should be examined when evaluating the extent of participation and suggested several relevant but not dispositive factors to consider: (1) the defendant/aider and abettor's role in planning the robbery; (2) his role in supplying or using lethal weapons; (3) his awareness of the "particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants"; (4) his presence at the scene of the killing and thus whether he was "in a position to facilitate or prevent the actual murder"; and (5) his actions after the use of

11

lethal force. (*Banks*, at p. 803; see *Clark*, *supra*, 63 Cal.4th at p. 611.)

A defendant acts with reckless indifference to human life when he """knowingly engag[es] in criminal activities known to carry a grave risk of death.""" (*Banks*, *supra*, 61 Cal.4th at p. 801, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577, quoting *Tison v. Arizona* (1987) 481 U.S. 137, 157.) This standard "has a subjective and an objective" component. (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).) To satisfy the subjective component, "'[t]he defendant must be aware of and willingly involved in the violent manner in which the [underlying felony] is committed,' and . . . must consciously disregard 'the significant risk of death his or her actions create.'" (*Ibid.*, quoting *Banks*, at p. 801.) The key is whether the defendant evinces "a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark, supra*, 63 Cal.4th at p. 617.) To satisfy the objective component, the risk of death """must be of such a nature and degree that, considering the nature and purpose of the [defendant's] conduct and the circumstances known to him . . . , its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant's] situation.""" (*Scoggins*, at p. 677, quoting *Clark*, at p. 617.)

Our Supreme Court has identified a number of considerations bearing on whether a defendant has acted with reckless indifference to human life. "No one of these considerations is necessary, nor is any one of them necessarily sufficient" (*Banks, supra*, 61 Cal.4th at p. 803); what matters is the totality of the considerations (*Scoggins, supra*, 9 Cal.5th at

12

p. 677).  The considerations are:  (1) "Did the defendant use or know that a gun would be used during the [underlying] felony," and, relatedly, "[h]ow many weapons were ultimately used?"; (2) "Was the defendant physically present at the crime," such that he had "the opportunity to restrain the crime or aid the victim?"; (3) "What was the duration of the interaction between the perpetrators of the [underlying] felony and the victims?"; (4) "What was the defendant's knowledge of his . . . confederate's propensity for violence or likelihood of using lethal force?"; and (5) "What efforts did the defendant make to minimize the risks of violence during the felony?"  (*Ibid.*, citing *Clark, supra*, 63 Cal.4th at pp. 618-623.)

Defendant contends that because no court has considered whether he was a major participant who acted with reckless indifference under the clarified *Banks* and *Clark* factors, the trial court could not have found as a matter of law that he was ineligible for resentencing.  As we held in *People v. Nunez* (2020) 57 Cal.App.5th 78, 92-97 (*Nunez*), review granted January 13, 2021, S265918, the prior special circumstance finding renders a defendant ineligible for relief under section 1170.95 as a matter of law, and "[t]he *Banks* and *Clark* decisions provide no basis for challenging the jury's factual finding that [defendant] either intended to kill or was a major participant . . . ."  (Accord, *People v. Simmons* (2021) 65 Cal.App.5th 739, 746-750, review granted Sept. 1, 2021, S270048; *People v. Jones* (2020) 56 Cal.App.5th 474, 479-482, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 457; *People v. Gomez* (2020) 52 Cal.App.5th 1, 14-17, review granted Oct. 14, 2020, S264033; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1141-1143, review granted Oct. 14, 2020, S264284.)

13

Defendant disagrees with *Nunez*, review granted, and the line of cases cited above. He argues that the decisions reaching the contrary conclusion make a better argument. (See, e.g., *People v. Arias* (2021) 66 Cal.App.5th 987, 1004, review granted Sept. 29, 2021, S270555; *People v. Pineda* (2021) 66 Cal.App.5th 792, 795-796, review granted Sept. 29, 2021, S270513 (*Pineda*); *People v. Gonzalez* (2021) 65 Cal.App.5th 420, 425, review granted Aug. 18, 2021, S269792; *People v. Secrease* (2021) 63 Cal.App.5th 231, 236, 247, review granted June 30, 2021, S268862 (*Secrease*); *People v. Harris* (2021) 60 Cal.App.5th 939, 956-958, review granted Apr. 28, 2021, S267802; *People v. York* (2020) 54 Cal.App.5th 250, 258-263, review granted Nov. 18, 2020, S264954; *People v. Smith* (2020) 49 Cal.App.5th 85, 93-94, review granted July 22, 2020, S262835; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1179-1180, review granted June 24, 2020, S262011.)

There is no need to repeat arguments that have been thoroughly addressed in the above cited opinions. We stand by our analysis in *Nunez*, review granted, and disagree that the opinions stating the contrary view reflect the better argument. We thus hold that defendant is unable to make a prima facie case for relief under section 1170.95. Moreover, even if we agreed with those cases which hold that a pre-*Banks* and *Clark* special circumstance finding under section 190.2, subdivision (a)(17) would not preclude defendant from making a prima facie showing, we would reject defendant's argument that the mere allegation that he did not act as a major participant with reckless disregard for life would be sufficient to make that showing. Indeed, defendant cites authority in his opening brief that support this point. Defendant cites *Secrease, supra*, 63

Cal.App.5th 231, review granted, and argues that a petitioner can challenge the sufficiency of the evidence to support the special circumstance in the section 1170.95 proceeding. (See *Secrease*, at pp. 244-245, 255.) However, as the *Secrease* court made clear, such a challenge would be made in order to demonstrate a prima facie case of eligibility, and if successful, the trial court would *then* be obligated to issue an order to show cause, but not otherwise. (*Id.* at pp. 264-265; accord, *Pineda*, *supra*, 66 Cal.App.5th at pp. 801-802, review granted.) Defendant made no such effort to make a showing in the trial court. "If as a matter of law the record of conviction shows . . . that the defendant was a major participant who acted with reckless indifference to human life, and the defendant does not claim he has new evidence to present, he has not made a prima facie case." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 173, review granted Nov. 18, 2020, S264978.) As defendant made no such claim in the trial court and makes no such claim here, the trial court did not err.

Moreover, defendant has made no effort to demonstrate prejudice. When a court has erroneously denied a petition without the issuance of an OSC, the petitioner bears the burden to demonstrate resulting prejudice under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, by showing a reasonable probability of a different result had the court not erred. (See *Lewis, supra*, 11 Cal.5th at p. 974.) Thus, assuming the trial court erred in ruling that the special circumstance finding rendered defendant ineligible as a matter of law, it is defendant's burden to show a reasonable probability that he would have made a prima facie showing of eligibility if the trial court had not erred.

15

Some of the courts that have held it is error to deny a section 1170.95 petition solely on the basis of the pre-*Banks* and *Clark* felony-murder special circumstance, also hold that the reviewing court may independently review the appellate record to determine whether the record is adequate for defendant to make a prima facie showing. (*Pineda, supra*, 66 Cal.App.5th at p. 802, review granted; *People v. Law* (2020) 48 Cal.App.5th 811, 822, 825-826, review granted July 8, 2020, S262490; see *Secrease, supra*, 63 Cal.App.5th at pp. 255, 260-261, review granted [only if record is adequate and the issue has been briefed].) Such a review may be undertaken to determine prejudice, and if the special circumstance was supported by substantial evidence, the error is harmless. (See *People v. Law*, at pp. 825-826.)

Defendant has not included in the appellate record any briefs or other documents from the record of conviction that he may have submitted in the trial court in an effort to make a prima facie showing. The only part of the record of conviction to which defendant refers here is the appellate opinion in *Daniels I, supra*, B249088. That opinion is more than adequate to permit a harmless error analysis. In addition, since respondent's brief contains a discussion of the *Banks* and *Clark* factors as applied to the facts contained in the record of conviction, defendant has had the opportunity to reply, but failed to address respondent's analysis. Defendant's reply is essentially an argument that the trial court should have issued an OSC and held an evidentiary hearing at which the prosecutor would have the burden to show beyond a reasonable doubt that defendant acted with reckless indifference to human life as a major participant as those terms were clarified in *Banks* and *Clark*.

We agree with respondent that the record of conviction establishes that defendant was a major participant who acted with reckless indifference to life under the clarifying factors set forth in *Banks, supra*, 61 Cal.4th at page 803 and *Clark, supra*, 63 Cal.4th at page 611. Defendant had a major role in planning the crime. He testified that he was the one who suggested getting marijuana from a medical dispensary and mentioned particular dispensaries that did not require medical authorization to enter. He told the detective that he went with the others intending to steal ("score") marijuana. He entered the dispensary, went to the loft, pointed a gun at an employee and demanded the marijuana. Defendant displayed a reckless indifference to life. He was armed and knew that his accomplices were armed, as Banks and either defendant or Gardiner entered with guns drawn. He was doubtless familiar with guns, having admitted that he sometimes carried a gun on his person for protection, and thus knew of the danger when he pointed a gun at an employee. After hearing the gunshot from downstairs, defendant assisted his accomplices in pushing their way out of the dispensary and was next to Banks while the security guard was pushing back at the door. Defendant was therefore present and in a position to prevent the murder but did not. After Banks fired the first shot at the guard, defendant ran out and away without any regard for the victim. (*Daniels I, supra*, B249088.)

As defendant makes no claim to have any new evidence on this issue, he has failed to demonstrate a reasonable probability that he would be able to make a prima facie showing of eligibility despite the evidence in the record of conviction supporting the special circumstances under the guidelines of *Banks* and *Clark*.

17

We conclude that the trial court did not error, but if it had, the error would be harmless.

## DISPOSITION

The order denying the section 1170.95 petition is affirmed.

_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.